# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| **TATE & LYLE AMERICAS LLC et al.,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**GLATT AIR TECHNIQUES INC.,**<br><br>**Defendant.** | Case No. 13-2037 |

### ORDER

This cause is before the Court on two post-judgment motions filed by the parties. First, the Rule 59 Motion for Additur or, in the Alternative, a New Trial on Damages (#279) filed by Plaintiff Tate & Lyle Americas LLC ("Tate & Lyle"), to which Defendant Glatt Air Techniques ("GAT") filed a Memorandum in Opposition (#292). Second, the Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial (#281) filed GAT. Plaintiffs Tate & Lyle and American Guarantee and Liability Insurance Company ("American Guarantee") (collectively "Plaintiffs") filed a Joint Response in Opposition to GAT's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial (#290). With leave of Court, GAT filed a Reply to Plaintiffs' Opposition (#309). For the reasons discussed below, Tate & Lyle's Rule 59 Motion for Additur or, in the Alternative, a New Trial on Damages (#279) is DENIED, and GAT's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial (#281) is also DENIED.

### I.     Background

This case arises from a fire that occurred inside a granulator at Tate & Lyle's Sycamore, Illinois facility on September 17, 2009. Tate & Lyle and GAT had entered into a contract under which GAT was the seller and Tate & Lyle the purchaser of the granulator that caught fire. American Guarantee issued a policy of property and

casualty insurance to Tate & Lyle and filed an Intervenor-Complaint, but is not a party to Tate & Lyle's Rule 59 Motion.

A jury trial was held in June 2016, and the jury found GAT liable for breach of contract as to Tate & Lyle and American Guarantee, but awarded damages only to American Guarantee in the amount of $853,254.00. The jury also found that GAT's negligence caused the fire, but did not award damages in any amount on this count. The jury found in favor of American Guarantee on its products liability claim, but did not award any damages. Finally, the jury found in favor of Tate & Lyle on GAT's counterclaim for breach of contract.

Tate & Lyle's Motion argues that the jury's award of zero dollars to Tate & Lyle has no evidentiary support and that an additur of $475,281.57 is appropriate. In the alternative, Tate & Lyle requests a new trial on the limited issue of damages.

GAT's Motion asks the court to enter judgment as a matter of law in favor of GAT, including an award of $700,000, or in the alternative a new trial pursuant to Rule 59.

## II.     Legal Standard

Federal Rule of Civil Procedure 50 provides that:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> (A) resolve the issue against the party; and
>
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

If the court does not grant the motion for judgment as a matter of law at trial, Rule 50(b) further provides that:

> No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no

later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.

Federal Rule of Civil Procedure 59 provides that "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Pursuant to Rule 59(e), a party may seek to alter or amend a judgment.

### III. Analysis

#### a. Tate & Lyle's Rule 59 Motion

##### i. Additur

Tate & Lyle first asks the Court to increase the judgment through additur. In *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935), the United States Supreme Court held that the Seventh Amendment to the United States Constitution bars a court from increasing a jury's damages award. The Court stated "where the verdict is too small, an increase by the court is a bald addition of something which in no sense can be said to be included in the verdict." *Id*. However, some federal circuits have recognized an exception to *Dimick* "where the jury has found the underlying liability and there is no genuine issue as to the correct amount of damages." *U.S. E.E.O.C. v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244, 1252 (11th Cir. 1997). The Seventh Circuit Court of Appeals has not recognized this exception, but at least one district court within the Seventh Circuit has acknowledged the exception. *See LaSalle National Bank v. Massachusetts Bay Insurance Co.*, 1997 WL 619856, *5 ("Where the parties do not dispute the appropriate level of damages, the court may bypass a new trial on damages by simply amending a jury's verdict with respect to damages. However, the court may proceed in this manner only where 'there is no genuine issue as to the correct amount of damages'—meaning that a new trial on damages would be 'a mere formality' that would serve 'no purpose.'") (quoting *EEOC v. Massey*, 117 F.3d at 1252-53).

In *Outboard Marine Corp. v. Babcock Industries*, 106 F.3d 182 (7th Cir. 1996), the Seventh Circuit considered a case where the plaintiff asked the court to increase the

damages award of $4,403,000 given by the jury. At trial, the plaintiff had requested $19.13 million, claiming breach of warranty leading to boat engine failures. The defendant argued at trial that the plaintiff's own design defects contributed to the costs incurred by the plaintiff. The defendant argued to the jury that even if it found that the plaintiff's design defects did not contribute, the plaintiff was only entitled to $12,384,700. The defendant, however, also presented the argument that due to the plaintiff's design defect, the plaintiff was only entitled to $303,000. On appeal, the plaintiff asked for the damages award to be increased to $12,384,700 since the jury found the defendant liable. The Seventh Circuit found that this would only be appropriate if the defendant had stipulated to the amount of damages, leaving only the issue of breach to the jury. *Id.* at 183-84.

In coming to this conclusion, the Seventh Circuit explained that juries are entrusted with great discretion. The Court opined that although a "rational path [was] not readily discernible between the evidence and argument of the parties and the jury verdict" the jury was not prohibited from coming up with an "intermediate alternative." *Id.* at 184, 186. The Court further noted that "[t]he trial in this case lasted a month, and immersed in the case as they were the jurors may have come to a reasonable judgment that about two-thirds of [the plaintiff's] damages were due to its own mistakes, rather than being caused by [the defendant's] mistakes. *Id.* at 186.

There is no question that, when the amount of damages is disputed, *Dimick* prohibits the court from increasing the award of damages chosen by the jury. The issue here is whether the parties disputed the amount of damages. As stated in the final jury instructions, the parties stipulated to the amount of GAT's damages in the event that the jury found in favor of GAT. The parties also stipulated to the $853,254.00 paid by American Guarantee to Tate & Lyle, which is what the jury awarded to American Guarantee.[1] The parties, however, did not stipulate to the amount of Tate & Lyle's

---

[1] The jury instruction read: "The parties have stipulated, or agreed to the following facts: 1. In 2008, Tate & Lyle and GAT entered into a written contract for the purchase of the GFG 850 for $4,207,786 and a written contract for the installation of the granulator for $2,834,236, for a total price of $7,042,022. 2. In the event that the jury finds in favor of GAT, the parties have agreed that the amount of GAT's damages is

4

damages. While Tate & Lyle argued at oral argument that GAT could "never dispute its cost of repairs," evidence was presented that supports the jury's decision to find an "intermediate alternative." At trial, evidence was presented that Tate & Lyle's employees ran the granulator, which later caught fire, despite being aware that a gummy substance had built up on the machine. The jury also heard evidence and was instructed by the Court that Tate & Lyle had breached its duty to identify and preserve electronic documents.[2] As in *Outboard*, it was reasonable for the jury to find a middle ground in reaching its damages award, and any additur at this time would risk violating the Seventh Amendment under *Dimick*. For these reasons, Tate & Lyle's request for an additur is DENIED.

###   ii. New Trial

Tate & Lyle argues alternatively for a new trial on the issue of damages alone. In *Gasoline Products Co. Inc. v. Champlin Refining Co.*, 51 U.S. 494, 499-500 (1931), the United States Supreme Court found that a new trial under Rule 59 on one issue alone, such as damages, "may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." The Court there found a new trial on damages violated the Seventh Amendment when the claim for damages was "so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter with confusion and uncertainty, which would amount to a denial of a fair trial." The Court further noted that even in a limited trial on damages, the jury would have to be advised of the

---

fixed at $700,000. 3. Pursuant to a valid contract of insurance, American Guarantee paid Tate & Lyle for claimed losses sustained as a result of the September 17, 2009, fire. The amount paid by American Guarantee to Tate & Lyle is at least $853,254, which is the amount American Guarantee seeks to recover in this action." See Jury Instructions, #262, p. 20.

[2] The Court instructed the jury that, "GAT contends that Tate & Lyle at one time possessed electronically stored information, namely electronic mail for a number of potential witnesses, that was destroyed. However, Tate & Lyle contends that the electronically stored information was purged in the normal course of business operations, namely through a document retention system for formerly employed personnel. All parties to this case had a duty under the law to preserve and maintain evidence that related to reasonably foreseeable litigation associated with the September 2009 fire. Plaintiff Tate & Lyle breached this duty by failing to identify and preserve certain electronic mail accounts in a timely manner. This breach prejudiced GAT by preventing it from reviewing potentially relevant e-mails sent to or from certain potential witnesses, including, among others, Thomas George." See Jury Instructions, #262, p. 19.

terms of the contract and other facts related to the contract, including date of formation and breach. Because these facts were not clear from the jury's verdict forms, the Court found a new trial on the limited issue of damages inappropriate and instead remanded for a new trial on all issues raised in the counterclaim.

Tate & Lyle seeks a new trial on the limited issue of damages, but as in *Gasoline Products*, the issue of damages in this case is clearly tied to the claim of liability. There were many disputed issues regarding GAT's liability, and while the jury found that GAT breached the contract and acted negligently, the jury verdict does not give precise details as to that breach and negligence such that a new jury could determine damages without risking GAT's right to a fair trial.

Further, a new trial on damages is unwarranted for the same reasons discussed above regarding Tate & Lyle's additur request. In *Outboard Marine*, the Seventh Circuit also considered the plaintiff's request for a new trial on damages. There, the Court noted that even when the jury's path to selecting a damages award was not readily discernible, "[t]he law neither requires juries to state reasons for their verdicts nor permits courts to inquire into the reasoning process of the jurors for the purpose of impeaching their verdict." *Oatboard Marine*, 106 F.3d at 186. The Seventh Circuit further explained that "the verdict is evaluated against the evidence, rather than against the likelihood that the jury arrived at the verdict by the 'rational' process that a judge would employ." *Id.* As long as a rational jury could have reached the verdict, the Seventh Circuit found a new trial on damages unjustified.

For the same reasons the Court denied Tate & Lyle's motion for additur, Tate & Lyle's request for a new trial on the issue of damages is DENIED.[3]

### b. GAT's Rule 50 and Rule 59 Motion

#### i. Rule 50(b): Judgment as a Matter of Law

GAT makes several arguments in favor of its motion for judgment as a matter of law. The Court will consider each argument in turn.

---

[3] Tate & Lyle does not request a new trial on all the issues, but even so, the Court notes that a new trial on all issues is unjustified for the reasons discussed in this Order.

### 1.  Ebadat's Testimony

GAT first argues that Tate & Lyle's theory that a filter caused the fire was dependent on the testimony of Dr. Vahid Ebadat, and that Ebadat's testimony was speculative and unreliable. GAT's argument is not new. The Court considered this argument in GAT's three pre-trial motions to exclude the testimony of Ebadat. The Court denied GAT's request to bar Ebadat, finding that Ebadat's expertise in static electricity hazards, dust explosions, and process and operations hazards qualified him to testify regarding the cause of the fire. (Order, June 2, 2016, #250.) The Court further noted that this is a case with competing experts, complicated by the fact that the relevant evidence was destroyed by the fire and not available for testing. The Court instead found that GAT's criticisms of Ebadat's testimony go to the weight of the evidence and that GAT was free to raise its concerns on cross-examination.

Tate & Lyle argues that neither a motion for judgment as a matter of law, nor a Rule 59 motion for new trial can be used as a vehicle to relitigate old matters, citing *McCloud v. Goodyear Dunlop Tires*, 2008 WL 2323792 (C.D. Ill. 2008). The Court in *McCloud* concluded that motions for judgment as a matter of law should not be used to relitigate old matters, but its only citation is to a Seventh Circuit case that states that a Rule 59(e) motion to alter or amend a judgment "does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Moro v. Shell Oil Co.*, 941 F.3d 872, 876 (7th Cir. 1996). The Court has not found, and Plaintiffs have not cited, any other case holding that Rule 50(b) motions may not re-raise issues previously considered by the court. Instead, the cases generally reflect decisions where the same argument is advanced and considered at various stages of the litigation. *See, e.g., Lapsley v. Xtek, Inc.*, 689 F.3d 802 (7th Cir. 2012) (the Seventh Circuit upheld a district court's decision to deny a Rule 50(b) motion asking the court to reconsider its initial pre-trial *Daubert* motion based on reliability of expert testimony without mentioning a prohibition on previously considered issues).  While the court may rely on its prior rulings when a litigant

attempts to relitigate matters in a Rule 50 motion, the litigant is not barred from raising such arguments.

The Court spent significant time analyzing GAT's pretrial motions relating to Ebadat. GAT's first argument is that Ebadat gave the opinion that a filter was cracked in the granulator at the time of the fire, causing the metal in the filters to connect, and that this opinion is unsupported. GAT raised these same concerns in its Motion to Exclude the Testimony and Opinions of Tate & Lyle's Expert Dr. Vahid Ebadat as to Whether a Spark from a Filter Caused the Fire (#183). In both that motion and the present motion, GAT argues that Ebadat artificially connected the filters in his testing and merely speculated that the filters could have connected. The Court discussed this argument on pages 8-10 of its Order denying GAT's motion to exclude Ebadat. (Order, June 2, 2016, #250, p. 8-9). Additionally, as pointed out by Tate & Lyle at oral argument, there was an extensive amount of circumstantial evidence presented at trial to support Dr. Ebadat's testimony that the metals could have touched. GAT was given great latitude to cross-examine Dr. Ebadat on this theory, and the jury was instructed to consider this circumstantial evidence as they saw fit. Nothing that came out during trial changes that analysis or opinion.

GAT also argues that Ebadat used an inaccurate temperature when testing the powder ignition. GAT raised this argument in its pretrial motion, but now argues that the only test done in the accurate temperature range showed that ignition was impossible at that temperature. The Court again refers to its prior Order, which noted that the actual temperature at the time of ignition was not known and that each party's expert reached a different conclusion on which temperature was most accurate. (Order, June 2, 2016, #250, p. 5-6). As pointed out by Tate & Lyle during oral argument, Dr. Ebadat had a scientific basis for his opinion, regardless of whether GAT agreed with his basis or the methodology used. GAT extensively cross-examined Dr. Ebadat regarding his opinions. The evidence at trial made clear that neither party could say definitively what temperature existed at the precise moment and location of ignition. That Dr. Ebadat used the high end of the possible range, and rounded from 59.5 to 60, does not

render his opinion legally unreliable. Nothing in Ebadat's testimony at trial or raised in GAT's Rule 50(b) Motion justifies barring this evidence.

The Court denies GAT's Rule 50(b) Motion as to Ebadat's testimony on the cracked filters for these reasons and the reasons started in its prior Order.

### 2. NFPA 654

GAT next argues that contrary to Ebadat's testimony at trial, Tate & Lyle did not delegate its responsibility to comply with NFPA 654. NFPA 654 is a standard that "presents safety measures to prevent and mitigate fires and dust explosions." NATIONAL FIRE PROTECTION ASSOCIATION 654. Section 1.1.2 of NFPA 654 provides that "[t]he owner/operator shall be responsible for implementing the requirements in this standard." *Id*. At trial, Ebadat acknowledged that under NFPA 654, the owner and operator are responsible for implementing the requirements, but stated that his "understanding is that Tate & Lyle delegated that responsibility to [GAT] through the contract and design of the machine." (Tr. Trans., Vol. 5A, 26:14-21.) Ebadat went on to acknowledge that his "understanding" on this delegation came from counsel for Tate & Lyle. (Tr. Trans., Vol. 5A, 27:1-6.)

GAT argues that Ebadat was not competent to testify as to any delegation by Tate & Lyle of its responsibilities under NFPA 654 and furthermore that Tate & Lyle did not delegate its NFPA 654 duty to GAT. GAT first raised this issue in its oral motion for Judgment as a Matter of Law at trial. At trial, GAT argued that whether GAT or Tate & Lyle was responsible for the NFPA 654 standards was a question of law based on contract interpretation. As the Court noted at trial, NFPA 654 is a trade standard that has not been adopted by the Code of Federal Regulations. (Tr. Trans., Vol. 9, 111:10-20.)

Additionally, there is no indication that the jury considered or relied on NFPA 654 in reaching its verdict. While both parties sought a jury instruction directing the jurors to consider the opposing party's violation of NFPA 654, the final jury instructions read to the jury did not include any reference to NFPA. The Court found the proposed

Illinois Pattern Jury Instruction 60.01 inapplicable here because NFPA 654 does not have the force of law.[4]

The Court instructed the jury that:

> Plaintiffs have the burden of proving defendant materially breached the contract in one or more of the following ways:
> 1. GAT improperly designed and/or installed the filters and/or filter housing such that a fire originated in the granulator;
> 2. GAT improperly designed and/or provided an inadequate suppression system such that the granulator was unreasonably unsafe.

(Jury Instructions, #262, p. 36.) The jury was specifically instructed to determine whether GAT breached the Contract in one of two ways: a faulty filter/filter housing design, or an inadequate suppression system. The jury was not instructed to determine whether GAT breached the contract based on any obligation under NFPA 654. Accordingly, NFPA 654 was not referenced anywhere on the verdict forms. The Court will not speculate as to the jury's reasoning and there is nothing to indicate that the jury relied on NFPA 654 in finding that GAT was liable for breach of contract.

For these reasons, GAT's Rule 50(b) Motion as to the testimony on NFPA 654 is DENIED.

### 3. Fire Suppression System

Next, GAT argues that Plaintiffs failed to offer any reliable, non-speculative evidence from which a reasonable jury could conclude that a fire suppression system would have prevented or mitigated Plaintiffs' damages. Prior to the trial, GAT filed a motion asking the Court to bar Ebadat from testifying as to whether a fire suppression system would have prevented or mitigated the fire. (GAT's Motion to Exclude the Testimony and Opinions of Tate & Lyle's Expert Dr. Vahid Ebadat as to Fire Suppression Issues, #185.) The Court denied GAT's motion, but limited Ebadat's

---

[4] The Notes on Use to IPI 60.01 provide that "This instruction should be given provided that the statute, ordinance, or administrative regulation has the force of law. If the subject standard does not have the force of law, this instruction should not be given." ILLINOIS PATTERN JURY INSTRUCTIONS - CIVIL 60.01, Violation of Statute, Ordinance, or Administrative Regulation (internal citations omitted).

testimony "to his conclusion on whether a fire suppression system should have been installed and whose responsibility it was to install the system." (Order, June 2, 2016, #250, p. 13.)

At trial, Ebadat acknowledged that he is "not a fire protection expert with expertise in [fire suppression] systems, but I've seen them installed, it basically detects a fire at an earlier stage and applies a suitable material to the fire to put it out." (Tr. Trans., Vol. 4B, 175:22-176:7.) GAT argues that because Ebadat acknowledged that he is not a "fire protection expert," Ebadat's testimony was unreliable and Tate & Lyle failed to present any evidence from which a reasonable jury could conclude that a fire suppression system would have prevented or limited the fire.

However, as the Court noted, Ebadat has extensive experience and knowledge in the field of static electricity hazards, dust explosions, and process and operational hazards. While he is not a "fire protection expert," his years of experience in the field qualify him to testify as to his own knowledge as to the purpose and intended use of a fire suppression system. Ebadat offered the opinion at trial that the purpose of a fire suppression system is "to detect a fire at an early stage and put it out, not too dissimilar to the sprinkler systems that we have in buildings." (Tr. Trans., Vol. 4B, 176:11-13.) Ebadat also explained that "the way [the suppression system] discharged was not effective in putting out the fire within the – within the granulator." (Tr. Trans., Vol. 4B, 172:4-7.) Although Ebadat did not opine that a suppression system would have mitigated damages or prevented the fire, it was reasonable for the jury to conclude from Ebadat's properly admitted testimony that the suppression system installed in the granulator was ineffective. GAT's Rule 50(b) Motion as to the fire suppression system is DENIED.

### ii. Rule 59: New Trial

GAT argues alternatively for a new trial. The Court will consider each of GAT's arguments in favor of a new trial in turn.

11

### 1. Evidence on Cause and Liability

GAT first argues that if the Court does not grant GAT judgment as a matter of law on the above considered points, then GAT should be entitled to a new trial for the same reasons. GAT offers no further argument in support of this position. For the reasons discussed above, the Court finds that the jury's verdict was supported by the evidence. GAT's Motion for a new trial on this basis is DENIED.

### 2. Inconsistent Verdict

Next, GAT argues that the jury verdict was inconsistent for two reasons: (1) American Guarantee's damages were identical for all three of its causes of action, but the jury awarded damages only under American Guarantee's breach of contract action; and (2) the award of $853,254.00 to American Guarantee on one cause of action is "a clear outlier" as the jury awarded Tate & Lyle zero dollars on both of its causes of action and zero dollars to American Guarantee on its other causes of action.

"As a rule civil juries must return consistent verdicts." *Will v. Comprehensive Accounting Corp.*, 776 F.2d 665, 677 (7th Cir. 1985). "A party claiming that inconsistent verdicts have been returned is not entitled to a new trial 'unless no rational jury could have brought back' the verdicts that were returned." *Deloughery v. City of Chicago*, 422 F.3d 611, 617 (7th Cir. 2005) (citing *Will v. Comprehensive Accounting Corp.*, 776 F.2d at 678).

As detailed above, the jury found in favor of American Guarantee on the breach of contract, negligence, and products liability claims. Although the jury awarded no damages on the negligence and products liability claims, the jury awarded damages to American Guarantee on the breach of contract claim of $853,254.00. This damages award was the full amount of damages incurred by American Guarantee. The Court instructed the jury, based on an agreement by the parties, that "[t]he amount paid by American Guarantee to Tate & Lyle is at least $853,254, which is the amount American Guarantee seeks to recover in this action." (Jury Instructions, #262, p. 20.) Given that the parties stipulated to this amount of damages, it was perfectly rational for the jury to

find in favor of American Guarantee on all counts and award damages in the full, stipulated amount. The Court finds no inconsistency in the jury's verdict.

GAT also maintains that Tate & Lyle's award of zero dollars should have been imputed to American Guarantee as Tate & Lyle's subrogee. GAT argues that no testimony was presented to the jury differentiating the damages claimed by Tate & Lyle and American Guarantee. As noted above, however, the parties agreed to the amount that American Guarantee paid Tate & Lyle for the damage to the granulator under the insurance policy. It was rational for a jury to find that the amount American Guarantee paid was the reasonable cost for repairs to the granulator, as well as the appropriate amount of damages. GAT has not shown that "no rational jury" could have reached the verdict in this case. GAT's Motion for new trial due to inconsistent verdicts is DENIED.

### 3. April 2016 Fire

GAT argues that it is entitled to a new trial because GAT was not permitted to use evidence of an April 2016 fire to cross examine Tate & Lyle witness Warren Nehmer. Nehmer testified that sucralose, when diluted, could not self-heat. (Tr. Trans. Vol. 7B, 20:15-25.) GAT maintains that it should have been permitted to counter this testimony with evidence of an April 2016 fire in Tate & Lyle's Sycamore facility.

The 2016 fire was raised by both parties in pre-trial motions in limine. Prior to the trial, the Court directed the parties to supplement their respective motions in limine by detailing the composition of the products involved in the 2009 and 2016 fires. After reviewing the parties' supplemental filings, the Court found that the two fires were unrelated and that "the products at issue were not sufficiently similar to justify admitting evidence of the second fire." (Order, June 10, 2016, #259, p. 2) The Court noted that "the fires occurred 7 years apart, in different locations, under very different circumstances" and that "the product involved in the fire at issue in this case contained approximately 3% sucralose, while the product involved in the unrelated 2016 fire was 100% finished sucralose." *Id*. The Court further noted that the evidence of the April 2016 fire was barred under Rule 403. Nothing that came out during trial changed that analysis.

GAT also argues that it should have been allowed to rebut Dr. Nehmer's testimony about the flammability of sucralose. After Dr. Nehmer testified that he did not believe diluted sucralose was subject to self-heating, GAT asked the Court to allow cross-examination relating to the 2016 fire. The Court agreed that Dr. Nehmer had opened the door for cross-examination on this point, but directed counsel for GAT to limit the number of questions to avoid another trial on a side issue. *See* d/e 306, p. 6. GAT was allowed to "cross-examine on the point", but also directed to not "belabor it". *Id.* at 9. GAT now complains that it was "only permitted to ask Nehmer one question regarding the subsequent April 19, 2016 fire" and "was precluded from impeaching Nehmer's … testimony with documents regarding the April, 2016 fire." D/e 282, p. 12-13. This is factually incorrect, as the Court allowed cross-examination but instructed GAT and Tate & Lyle to avoid turning it into "an hour's worth of testimony about a fire that Dr. Nehmer knows nothing about." That GAT now wishes it had asked more questions or referenced documents during Dr. Nehmer's cross-examination does not justify a new trial.

The evidence of the April 2016 fire was properly excluded initially, and GAT was given an opportunity to cross-examine Dr. Nehmer about it when the flammability of sucralose was questioned. GAT's Motion for new trial to admit evidence of the second fire is DENIED.

### 4.  Exemplar Filters

GAT also requests a new trial based on the admission of Exhibits 154 and 155, which were exemplar filters. GAT's Motion argues that the filters were "exceedingly prejudicial" to GAT because the jury was invited to speculate on the variation in filters as to safety, performance, function, and strength.

GAT argues that the prejudicial nature of the filters exceeds any potential probative value. Prior to and during the trial, GAT objected to the introduction of the filters based of Federal Rules of Evidence 401, 403, and based on authenticity and foundation. GAT further argued at oral argument that the manufacturing abnormalities in the exemplar filters had no probative effect as to whether the pieces of metal could

14

have come into contact. Tate & Lyle, at oral argument, pointed out that Dr. Ebadat relied on the exemplar filters in forming his opinion and that GAT's expert, Dr. Glor, was not made aware of any differences in the filters and thus the fact that the exemplar filters showed abnormalities was important to Dr. Glor's credibility.

The Court finds, as it did at trial, that GAT has not shown that any unfair prejudice outweighed the probative value. The filters proffered by Tate & Lyle were from a box of filters delivered months before the fire. The probative value of these filters was high as the filters at issue in the case were destroyed by the fire. GAT argues that it suffered prejudice because Tate & Lyle invited the jury to speculate as to the variance in filters, but both parties used the filters during the trial and provided expert testimony regarding the safety, performance, function, and strength of the filters.

GAT's Motion for new trial based on the admission of the exemplar filters is DENIED.

### 5. Cracked Filters

Finally, GAT argues that a new trial is warranted because the jury was misled on the issue of cracked filters. GAT argues that testimony at trial gave misleading information that there were cracked filters in the granulator at the time of the fire. According to GAT, the Court failed to give a limiting instruction to the jury and this prejudice was not cured.

As noted above, the filters at issue were destroyed in the fire, and it is unknown whether the filters were cracked at the time of the fire. Tate & Lyle maintains that there were known cracked filters at some time prior to the fire, but acknowledges that it does not know if the cracked filters remained in the granulator at the time of the fire. GAT argues that Tate and Lyle witnesses gave misleading testimony that the cracked filters remained in the granulator at the time of the fire.

Several witnesses gave testimony on this topic, which the Court has thoroughly reviewed. GAT focuses on the testimony of Michael Ernster, a former Tate & Lyle employee who testified at trial affirmatively that there were broken filters in the granulator at the time of the fire. (Tr. Trans. Vol. 1A, 102:4-6; Vol. 1B, 135:13-137:19;

140:15-141:7.) However, GAT also impeached Mr. Ernster with Tate & Lyle's Response to Defendant Glatt Air Technique Inc.'s Request to Admit. (GAT Trial Exhibit 9.) In its Response to GAT's Request to Admit, dated June 18, 2014, Tate & Lyle acknowledged that at that time it did not have any knowledge of cracked filters in the granulator at the time of the fire. GAT introduced this evidence to impeach Ernster during cross-examination and to prove that no cracked filters were known to be in the granulator at the time of the fire.

Further, numerous Tate & Lyle witnesses testified that at some time prior to the fire, the granulator had cracked filters, but did not state that there were cracked filters in the granulator at the time of the fire. *See* James Child Testimony, Tr. Trans. Vol 1B, 166:6-18; William Skelding Testimony, Tr. Trans. Vol 1B, 219:17-19; 229:9-230:8.; Vahid Ebadat Testimony, Tr. Trans. Vol. 4A, 100:16-25.

A thorough review of the testimony at trial reveals that only Michael Ernster testified affirmatively that there were cracked filters in the granulator at the time of the fire. Although this testimony was inconsistent with Tate & Lyle's Response to GAT's Request to Admit, GAT used that Response to impeach this testimony and to argue to the jury GAT's position that no evidence was shown that the filters were cracked at the time of the fire. It is the jury's role to resolve evidentiary disputes. GAT has not shown that a new trial is warranted on this point. GAT's Motion for new trial based on the testimony at trial regarding cracked filters is DENIED.

### IV.   Conclusion

For these reasons, Tate & Lyle's Rule 59 Motion for Additur or, in the Alternative, a New Trial on Damages (#279) is DENIED, and GAT's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial (#281) is also DENIED.

ENTERED this 12th day of October, 2016.

s/ERIC I. LONG<br>UNITED STATES MAGISTRATE JUDGE